

**SO ORDERED.**

**SIGNED June 26, 2025.**

JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| In re:<br>Elvis Thompson,<br>*Debtor* | Case No. 22-20401 |
| Lucy G. Sikes, Trustee,<br>*Plaintiff* | Chapter 7 |
| v. | Judge John W. Kolwe |
| Prime Holdings Insurance Services, Inc. et al.<br>*Defendants* | Adv. Proc. No. 25-2004 |

**RULING ON MOTION TO DISMISS AND ORDER**

Before the Court is Prime Insurance Company's ("Prime") Motion to Dismiss Complaint or, Alternatively, to Abstain from Adjudicating or to Sever Count 3 (ECF #11), seeking dismissal of the claims against it asserted by Plaintiff Lucy G. Sikes, Chapter 7 Trustee (the "Trustee"). Having considered the parties' briefing, the arguments at the hearing, and the applicable law, the Court concludes that the Motion should be granted and the claims against Prime dismissed.

## Overview

In this adversary proceeding, the Chapter 7 Trustee seeks to avoid a release that the late Debtor, Mr. Thompson, signed, which the Trustee claims resulted in Mr. Thompson releasing a valuable bad faith claim against Prime (Count 1). The Trustee also asserts that bad faith claim against Prime for its conduct in handling litigation against Mr. Thompson, as outlined below (Count 3). (The only other claim set out in the Complaint, Count 2, is a professional malpractice claim against an attorney for the Debtor and the attorney's employer that is not relevant to Prime.) The essential question is whether Mr. Thompson, who was not a named insured under the Prime policy at issue but was treated as a covered driver under certain mandatory provisions of the Louisiana motor vehicle law, was entitled to assert a bad faith claim against Prime himself under Louisiana insurance law as if he were a named insured. If Louisiana insurance law does not provide him with the right to assert a bad faith claim against Prime, then the Trustee's claims against Prime in this adversary proceeding fail as a matter of law, and Prime's Motion to Dismiss must be granted. On the other hand, if Mr. Thompson had the right to assert a bad faith claim against Prime, then the Court must determine whether the Trustee's Complaint has set out a basis for maintaining the claim here.

## Rule 12 Standard

Prime seeks dismissal of the Trustee's claims against it for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), made applicable to bankruptcy proceedings under Fed. R. Bankr. P. 7012(b). The Court applies the standard set out in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), under which "a complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' Thus, a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'"[1] In deciding a motion to dismiss, the Court may look only to the pleadings, including attachments thereto,[2] as well as matters of which the Court may take judicial notice under Fed. R. Evid. 201.[3] "In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. In ruling on the motion, the court cannot look beyond the pleadings."[4] Thus, the Court's analysis begins with the Complaint.

**Factual Allegations and Background**

According to the Trustee's First Supplemental and Amending Complaint (ECF #2), which the Court must view in the light most favorable to the Trustee, this case arises out of a March 21, 2017 motor vehicle accident that occurred when the late Debtor, Elvis Dean Thompson, drove his 18-wheeler into the back of a vehicle driven by Tracy Day, which caused her vehicle to collide with another vehicle (the "Accident").[5] At the time of the Accident, Mr. Thompson was in the course and scope of his employment with Terry Graham Trucking Incorporated ("TGTI"), which owned the truck in question.[6] The Trustee also asserts:

---

[1] *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678, itself quoting *Twombly*) (some internal quotation marks omitted). The *Twombly-Iqbal* standard necessarily looks to the general pleading requirements set out in Fed. R. Civ. P. 8(a), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[2] *See Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

[3] *See Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011); Fed. R. Evid. 201.

[4] *In re Ernst*, 570 B.R. 750, 753–54 (Bankr. W.D. La. 2017) (citations omitted).

[5] *See* First Supplemental and Amending Complaint, ¶ 3 (ECF #11).

[6] *Id.*, ¶ 5.

> 6. Thompson and TGTI were insured by Prime Insurance Company ("Prime") under commercial business auto insurance policy number SC1701534. ("The Policy.") On its face, the Policy provided $1,000,000.00 in coverage. But, the Policy also contained a "Scheduled Drivers Endorsement" (PCA–99–03) that provided that "No Coverage shall be provided under this Policy for any covered Auto which is being used or operated by anyone other than the driver(s) or operator(s) scheduled on this Policy." Only two drivers were named in the Policy: (1) Philip Ray Scott; and (2) Courtney Eugene Graham. Thus, Elvis Thompson was an "unlisted driver."

*Id.*, ¶ 6.

Notwithstanding the fact that Mr. Thompson was an unlisted driver, the Trustee asserts that the insurance policy provided insurance coverage to Mr. Thompson with respect to third parties under La. R.S. § 32:900 (under Title 32 of the Louisiana Revised Statutes, governing Motor Vehicles and Traffic Regulation). In relevant part, § 32:900 provides that motor vehicle insurance policies "[s]hall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles **with the express or implied permission of such named insured** . . . ." § 32:900(B)(2) (emphasis added). Citing Louisiana case law, the Complaint asserts that this provision trumps any language in the insurance policy to the contrary absent narrow exceptions, one of which is that the vehicle owner provides separate insurance coverage at least equal to the original coverage for the otherwise excluded driver.[7]

Thus, according to the Complaint, Mr. Thompson was not listed in the policy itself and was only covered by the Prime policy as an unlisted driver using the truck "with the express or implied permission of such named insured." The Prime policy provided for $1,000,000 in coverage, but the Complaint points out that the policy contained a provision that could have limited Prime's exposure to Mr. Thompson as someone entitled to coverage under the policy but not a named insured:

---

[7] *See* First Supplemental and Amending Complaint, ¶¶ 7-8.

> 9. However, at Section I, par. B, of the Policy titled "Liability Exclusions" the Policy provides:
>
> > In the event that any of the exclusions stated in this Policy are found by a court of law to be unenforceable or in contradiction to applicable law in regards to a specific Claim, the invalid provision is to be interpreted as providing the minimum insurance coverage required under the financial responsibilities laws, in place of the invalid exclusion, for such Claim.
>
> Because Elvis Dean Thompson was an unlisted driver, Prime could easily have limited its liability for all claims arising from the crash of March 31, 2017 to $300,000.00, which is the minimum required statutory limits for a policy insuring a commercial truck like Thompson was driving.

*Id.*, ¶ 9.

The Complaint asserts that four lawsuits were filed in Louisiana state court against Mr. Thompson, TGTI, and Prime, along with other parties not relevant here, based on the Accident and that both Prime and the defense counsel it appointed, Paul Eckert, engaged in misconduct in connection with the lawsuits.[8] (Mr. Eckert and his law firm are also named defendants in this adversary proceeding.) Specifically, the Complaint alleges that "Prime appointed conflicted defense counsel, failed to reserve its rights to contest coverage, failed to keep TGTI or Thompson apprised of their exposure or the proceeding lawsuits and made no good faith effort to timely settle these suits and extricate its insureds from what was from the start a clearly and substantially certain excess judgment."[9] With respect to Mr. Eckert, the attorney appointed by Prime, the Complaint alleges that he represented Mr. Thompson, TGTI, and Prime simultaneously without any reservation of rights notice and with no non-waiver agreement with either Mr. Thompson or TGTI, which the Trustee claims resulted in a waiver of Prime's coverage defense under Louisiana law, notwithstanding Mr. Eckert's attempt to raise the coverage defense approximately three years into his conflicted representation.[10] In short, the Trustee claims that Prime's actions exposed Mr. Thompson and TGTI to multi-million dollar judgments.[11]

---

[8] *Id.*, ¶¶ 14-17.
[9] *Id.*, ¶ 15.
[10] *Id.*, ¶¶ 16-17.
[11] *See generally id.*, ¶¶ 18-25.

Highly relevant to this adversary proceeding, TGTI asserted a cross-claim against Prime in one of the state court actions based on Prime's alleged bad faith.[12] The Complaint alleges that both TGTI and Mr. Thompson had bad faith claims against Prime worth millions of dollars apiece, that Prime paid the owner of TGTI $75,000 to release its bad faith claim against Prime, and that Prime paid a private investigator to track down Mr. Thompson, then basically homeless, to pay him $1,000 on May 4, 2022 to waive any bad faith claim he might have against Prime.[13] The Complaint claims that Mr. Thompson had limited education and did not understand what he was signing or how big a potential claim he was giving up.[14]

Two of the state court plaintiffs filed this involuntary petition against the Debtor on September 8, 2022. The Trustee commenced this adversary proceeding on February 3, 2025. Based on the above facts and others, the Trustee asserted two claims against Prime: Count 1 seeks to unwind the $1,000 transaction by which Mr. Thompson waived any bad faith claim against Prime, assuming he even had such a claim. Assuming the Trustee prevails on Count 1 and therefore revives such a bad faith claim, Count 3 seeks to actually recover against Prime on that bad faith claim under La. R.S. § 22:1892 (amended effective July 1, 2024) and/or § 22:1973 (repealed effective July 1, 2024).

Prime filed this Motion to Dismiss (ECF #11) on March 31, 2025. The Motion raises a number of arguments, but the dispositive one for purposes of this ruling is that although Mr. Thompson was insured under the policy with respect to third parties under mandatory provisions of Louisiana's motor vehicle laws (i.e., La. R.S. § 32:900), he was not a "named insured" under Louisiana's insurance laws and therefore never could have asserted a bad faith claim against Prime under Louisiana's insurance laws. Thus, even if the Trustee could unwind the $1,000 payment for the release, there is no claim that could be revived. In opposition, the Trustee argues that if someone is insured under a policy with respect to third parties

---

[12] *Id.*, ¶¶ 38-47.
[13] *Id.*
[14] *Id.*, ¶ 48-49.

under the motor vehicle law, they can also sue the insurer under the policy for the insurer's bad faith under Louisiana's insurance laws, notwithstanding the fact that he is not a "named insured." The Court heard oral argument on May 21, 2025 and took this matter under advisement.

**Analysis**

Prime's Motion to Dismiss puts forward a number of arguments, but the primary question is whether Mr. Thompson, who was not a named insured under the Prime policy, could have asserted a bad faith claim against Prime under Louisiana's insurance laws. If Mr. Thompson did not have a right to assert a bad faith claim against Prime, then the Trustee cannot assert that claim now, notwithstanding the fact that Mr. Thompson agreed to waive such a claim for $1,000. Put another way, if Mr. Thompson never could have asserted the bad faith claim against Prime, then neither can the Trustee. Thus, the Court will start with that determination for Count 3 because it could moot Count 1.

The Trustee's bad faith claim against Prime arises out of La. R.S. § 22:1973 (repealed effective July 1, 2024) or its effective replacement, § 22:1892(I) (amended effective July 1, 2024). Prime's argument is simple: these statutes only grant *named* insureds the right to sue an insurer for bad faith, and Mr. Thompson was indisputably not a named insured under the Prime policy. Mr. Thompsons' status with respect to Prime is limited to someone entitled to coverage under the Prime policy pursuant to the mandatory provisions of the motor vehicle laws, La. R.S. § 32:900.

For reference, the pre-repeal version of § 1973 provided, in relevant part:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

La. R.S. § 22:1973(A) (repealed effective June 30, 2024). The statute also listed specific actionable breaches of the insurer's duties. La. R.S. § 22:1892(I) (amended effective July 1, 2024) is roughly the equivalent of that portion of the repealed statute:

> I.(1)(a) An insurer, including but not limited to a foreign line or surplus line insurer, owes to its insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer that breaches the duties of this Subsection shall be liable for any proven economic damages sustained as a result of the breach. . . .

La. R.S. § 22:1892.

These statutes only refer to an "insured," which on the face would not seem to be very helpful in determining whether anyone provided coverage under the policy can sue for bad faith, or whether only a named insured can. Prime cites a host of case law for the proposition that only the named insured, i.e., someone in contractual privity with the insurer, can bring a bad faith claim under the statutes.[15] The Court has reviewed Prime's authority and finds it to be valid, and the Court's own research reaches the same conclusion that only a named insured under the policy may bring such a claim.

First, as Prime correctly notes, because both §§ 22:1973 and 22:1892 are penal in nature, they must be strictly construed,[16] and courts have done so. In *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184 (La. 1997), the Louisiana Supreme Court, interpreting La. R.S. § 22:1220 (renumbered to La. R.S. § 22:1973 effective January 1, 2009), concluded that "insured" means the named insured in contractual privity with the insurer. The Court noted that Section 22:1220(A) (just like La. R.S. §§ 22:1973 and 22:1892), provides: "An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make

[15] *See* Prime's Memorandum in Support, pp. 14-20.

[16] *Id.* at p. 15 (citing *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 186 (La. 1997), *Oubre v. Louisiana Citizens Fair Plan*, 79 So. 3d 987, 997 (La. 2011); *Hart v. Allstate*, 437 So. 2d 823 (La. 1983); Morris v. State Farm Fire & Cas. Ins. Co., 2013 WL 686456 at *2 (W.D. La. 2013) (citing *Hart*)).

a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." La. R.S. § 22:1220 (quoted in *Theriot).* Citing *Manuel v. La. Sheriff's Risk Mgmt. Fund,* 664 So.2d 81 (La. 1995), the Court held: **"**The first sentence of Subsection A of the statute recognizes the jurisprudentially established duty of good faith and fair dealing owed to the insured, **which is an outgrowth of the contractual and fiduciary relationship between the insured and insurer**. The second sentence of Subsection A, by its plain wording, applies to both insureds and 'claimants.'" 694 So. 2d at 187 (citations omitted, emphasis added).

> The definitional section of Title 22, Part XXVI, in which the statute in question appears, defines "insured" as the party named on the policy. La. R.S. 22:1212, B. Had the legislature meant to address only the rights of "insureds," it would have been unnecessary to use the phrase "insureds *or* claimants" in the act. Moreover, Subsection C of the act, which stipulates the penalties which may be awarded for its violation, provides that in addition to the damages to which a "claimant" is entitled, the "claimant" may be awarded penalties. We have no trouble concluding that the legislature intended to provide a right of action directly in favor of third-party claimants in certain situations when it enacted La. R.S. 22:1220. We are unwilling to suppose that the legislature failed to understand the distinction between "insureds" and "claimants" when it enacted La. R.S. 22:1220.

694 So. 2d at 188. The definitional statute the Court referred to, La. R.S. § 22:1212, was later renumbered to La. R.S. § 22:1962, and it defines "Insured" to mean "the party named on a policy or certificate as the individual with legal rights to the benefits provided by such policy." La. R.S. § 22:1962(B).

Thus, the Louisiana Supreme Court has concluded that to assert a bad faith claim against an insurer, the "insured" must be in contractual privity with the insurer, i.e., be a named insured. As Prime points out, the Louisiana Supreme Court expanded on this reasoning in *Smith v. Citadel Insurance Co.*, 285 So.3d 1062 (La. 2019), emphasizing that the duty of good faith grows out of the contractual relationship:

> Although the duty of good faith owed by the insurer to the insured is codified in La. R.S. 22:1973, the bad faith cause of action by an insured against the insurer does not rest solely on this statute. **The duty of good faith is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties. In the absence of a contractual obligation, the duty of good faith does not exist.**

285 So. 3d at 1069 (citations omitted, emphasis added).

In *Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, 780 F. App'x 132, 135 (5th Cir. 2019), the Fifth Circuit reiterated that only a named insured may bring a bad faith claim:

> Under Louisiana law, an "insured" is "the party named on a policy or certificate as the individual with legal rights to the benefits provided by such policy." La. Stat. Ann.§ 22:1962(B). When the statute refers to a "person insured by the contract," it contains the specific language referring only to an entity named as an insured. Waypoint argues that while it is not an "insured," the statute imposes a duty to not only the insured, but also to a "claimant." Though that is true generally of subsection (A), Waypoint's claim is based entirely on paragraph (B)(5), which refers more specifically to a "person insured by the contract." Because paragraph (B)(5) uses the specific language of "person insured by the contract," it limits the insurer's duty to only named insureds.
>
> As Waypoint notes, substituting "insured" for "person insured" would moot the distinction that the legislature made between "the insured," "the claimant," and "any person." Subsection (A) first creates a duty to the insured of good faith and fair dealing, and then to the insured or the claimant to make a reasonable effort to settle claims. *Id*. § 22:1973(A). However, in paragraph (B)(5), the use of the word "claimant" is used only in reference to the "person insured by the contract" having a cause of action for failure to pay claims in bad faith. A "person insured by the contract" does not include third-party claimants. *See Toerner v. Henry*, 812 So. 2d 755, 758 (La. Ct. App. 2002)

> (noting that the provisions are subject to strict interpretation).
>
> Louisiana courts have consistently applied that interpretation. The Louisiana Supreme Court held in 2004 that while the statute uses the word "claimant," it is only applicable to a person insured by the contract, which excludes a third-party claimant. *Langsford v. Flattman*, 864 So. 2d 149, 151 (La. 2004). Waypoint attempts to distinguish *Langsford* from the present case by arguing that it is a third-party beneficiary to the professional liability contract, not a victim of an automobile accident like the plaintiff in *Langsford*. We see no reason why the principle in *Langsford* cannot be applied here. *Langsford* held that "a third party claimant such as plaintiff is not a person insured by the contract for purposes of La. R.S. 22:1220(B)(5)." *Id*. The Court in *Langsford* was not deciding this as a one-off; it cited Louisiana appellate courts in support of the general proposition that the jurisprudence has held that a third-party claimant has no cause of action under the statute. *Id*. **The Louisiana appellate courts have all held that only named "insureds" may bring a suit for bad faith damages.** *See e.g.*, *Toerner v. Henry*, 812 So. 2d 755, 757-58 (La. Ct. App. 2002); *Moxley v. Cole*, 736 So. 2d 249, 256 (La. Ct. App. 1999); *Smith v. Midland Risk Ins. Co.*, 699 So. 2d 1192, 1197 (La. Ct. App. 1997); *Armstrong v. Rabito*, 663 So. 2d 512, 514 (La. Ct. App. 1995).[1]

780 F. App'x at 134–35 (emphasis added).

Based on the Louisiana Supreme Court's clear interpretation of the relevant statutory language, which the Fifth Circuit has applied without controversy, it would seem the Court must conclude that only an insured in contractual privity with the insurer may bring a bad faith claim against the insurer. It is undisputed that Mr. Thompson was not in contractual privity with Prime and was not a named insured under the policy, only a person entitled to coverage pursuant to the expansive motor vehicle laws under La. R.S. § 32:900. Thus, it would seem he could not have sued Prime for bad faith.

Despite this seemingly overwhelming line of authority, the Trustee argues that La. R.S. § 32:900, part of the Louisiana Motor Vehicle Safety Responsibility Law,

which provides coverage to permissive drivers of motor vehicles, somehow grants the right to such a permissive driver to assert all of the rights a named insured could, including a bad faith claim under La. R.S. §§ 22:1973 and/or 1892.[17] The problem for the Trustee is that she has not cited a single case that reaches that conclusion. Furthermore, La. R.S. § 32:900 was enacted in 1952, well before the bad faith statutes at issue in any of the cases cited above, and the Louisiana Supreme Court and other courts have consistently held that a bad faith claim against the insurer may only be asserted by a named insured, someone in contractual privity with the insurer.

The Trustee is making essentially a policy argument, that this *must* be what the legislature meant, but that argument is not supported by the applicable statutes and relevant case law. This Court finds that the Louisiana Supreme Court has already decided this issue, and in the absence of contrary authority, it will follow the clear rule that only someone in contractual privity with the insurer, i.e., a named insured, not someone merely provided coverage under the policy under La. R.S. § 32:900, may bring a bad faith claim against that insurer.

## **Conclusion**

Mr. Thompson was not a named insured and was not in contractual privity with Prime. Accordingly, under the applicable statutes, as interpreted by the Louisiana Supreme Court, he could not have brought a bad faith claim against Prime under La. R.S. §§ 22:1973 or 22:1892. In accepting $1,000 to give up whatever bad faith claim he may have had, he effectively got money for nothing, as he was not waiving a claim he actually had. As a matter of law, the Trustee has failed to state a claim against Prime. In Count 1, the Trustee seeks to avoid the $1,000 release transaction on the grounds that Mr. Thompson was underpaid for a valuable bad faith claim, but in fact the claim was nonexistent, and therefore there is no basis for avoiding the release, so the Trustee has failed to state a claim. Count 3, premised on Count 1 being successful, seeks to assert Mr. Thompson's bad faith claim, but as established above, Mr. Thompson never had the right to assert such a claim against

[17] *See* Trustee's Opposition, pp. 11-12 (ECF #18).

Prime because he was not in contractual privity with Prime. Therefore the Trustee has failed to state a claim on that count either. Accordingly, Prime's Motion to Dismiss should be granted as to both claims against it.

**<u>Order</u>**

For the reasons set out in this opinion,

IT IS ORDERED that Prime's Motion to Dismiss (ECF #11) is GRANTED, and the claims against Prime are DISMISSED WITH PREJUDICE.